AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: EMJ 5/08/2024

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNTS "ryan_peterr" AND "abbeyforce24" THAT IS STORED AT PREMISES CONTROLLED BY SNAP, INC.

Case No. MJ-24-417-STE

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference herein.

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. s. 2251(a) and (e) | Sexual Exploitation of a Child |
| 18 U.S.C. s. 2423 | Transportation of Minors |

The application is based on these facts:

See the attached Affidavit of FBI Special Agent David Garrison, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David Garrison, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 10, 2024

*Judge's signature*

City and state: Oklahoma City, Oklahoma

SHON T. ERWIN, U.S. MAGISTRATE JUDGE
*Printed name and title*

**AFFIDAVIT IN SUPPORT OFAN APPLICATION FOR A SEARCH WARRANT**

I, David A. Garrison, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this Affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by Snap, Inc.,[1] a provider headquartered at 2772 Donald Douglas Loop North, Santa Monica, California 90405. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Snap, Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since June 12, 2005. During the past 19 and half years, I have conducted a wide variety of investigations, including numerous cases involving the sexual exploitation of children.

3. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2423(a), 2251(a), 2252A(a)(2)(B),

---

[1] Snap, Inc is a brand name for an image messaging service and application, through which users can share images that may be private and temporary or public and stored for retrieval.

and 2252A(a)(5)(B) have been committed by VISHNU PALITHYA (SUBJECT) using the Snapchat, Inc. account "ryan_peterr" to exploit the minor user (JANE DOE) of Snapchat, Inc. account, "abbeyforce24." Collectively, these are the **TARGET ACCOUNTS**. There is also probable cause to search the information described in Attachment A for evidence, fruits, and instrumentalities of these crimes, as described in Attachment B, and to seize such evidence, fruits, and instrumentalities.

**JURISDICTION**

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

6. When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Snap, Inc. from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

**PROBABLE CAUSE**

7. On May 3, 2024, an Amber Alert[2] was issued for JANE DOE, resulting in her location and recovery at the Super 8 by Wyndham Oklahoma/Frontier City, Oklahoma City,

---

[2] Amber Alert is an emergency response system that disseminates information about a missing person (usually a child), by media broadcasting or electronic roadway signs. This specific Amber Alert was assigned the case number: 2024-0031803.

Oklahoma (motel). JANE DOE was alone in the room at the time of her recovery. A review of the motel surveillance camera footage showed an adult male, later identified as the SUBJECT, operating a black, 2015 Kia Optima, with Oklahoma license plate NGW691, and arriving at the motel with a juvenile female, who was later identified as JANE DOE, sitting in the front passenger seat. Further surveillance footage showed both the SUBJECT and JANE DOE check in to the motel and occupy room #738.

8. I conducted a forensic interview of JANE DOE at the motel on May 3, 2024. During the course of that interview, JANE DOE provided the following information:

9. JANE DOE had been living with her father in Arkansas for about one year. In the early morning hours of May 3, 2024, she texted her father from an RV, which was located on her father's property next to the house, that she was headed off to sleep. She woke up a few hours later, while it was still dark outside, in the back seat of a car she did not recognize. She was alone in the car other than the driver whom she did not know. She went back to sleep shortly thereafter and woke up again around 10:00 a.m., alone, in a motel room. She went back to sleep soon afterwards and woke up again, still alone, in the same motel room later that afternoon. Using Google maps, she identified the address of the motel where she was located and texted that information to her mother. Shortly thereafter, officers from the Oklahoma City Police Department ("OCPD") located her and escorted her out of the motel room.

10. Subsequently, I conducted a telephonic interview of JANE DOE's father, who provided the following information:

11. JANE DOE's father returned home from work during the early morning hours of May 3, 2024. While getting ready for bed, he received a text from JANE DOE, who was located in the previously-referenced RV, letting him know she was headed to sleep. He went to get JANE

DOE from the RV around 7:00 a.m. to take her to school, but she was missing. Soon thereafter, he found a handwritten note on a single sheet of paper that said in part: "Dad I am sorry but I am leaving to go live with someone I really love and he loves me back, and we are gonna go live together . . . ."

12. During the course of these interviews, the SUBJECT was located near his residence in Edmond, Oklahoma. After being detained on suspicion of the state felony charges of kidnapping and abduction, he was transported to the motel in an OCPD marked vehicle. I conducted a custodial interview of the SUBJECT, and, after he waived his *Miranda* rights, he provided the following information:

13. The SUBJECT, while living in Edmond, Oklahoma, which is within the Western District of Oklahoma, met JANE DOE online around January or February of 2024 after being matched up on the OKCupid Dating: Date Singles application (dating site).[3] Utilizing the username, "ryan peterr," he described his motivation in using the site as wanting to find love and find someone with whom he could establish a long-term relationship. He was matched up with another user who identified herself as a 19-20 year old woman and who was later identified as JANE DOE.

14. Subsequent to meeting on the dating site, the SUBJECT and JANE DOE began communicating on Snapchat with the SUBJECT utilizing the username, "ryan_peterr" and JANE DOE utilizing the username, "abbeyforce24." The SUBJECT described the nature of their chats as discussing normal, everyday topics. After further questioning, the SUBJECT disclosed that he

---

[3] OKCupid Dating is a U.S.-based, internationally operating online dating and friendship,and formerly also a social networking website and application. It was formerly a social networking website. It is further advertised as a "17+" application.

had used Snapchat to exchange sexually explicit images and videos with JANE DOE on May 2, 2024.

15. The SUBJECT went on to describe how, while he was located in his apartment in Edmond, Oklahoma and utilizing his cell phone, he took and sent JANE DOE a couple of pictures of himself without clothes, with his genitals exposed. JANE DOE sent him one picture and one video. The SUBJECT thought JANE DOE was located in the bathroom of her father's home when JANE DOE took both the picture and the video. JANE DOE was not wearing any clothes in either the picture or the video, and, during the video, JANE DOE was seated on the floor and inserting her fingers into her exposed vagina.

16. During the course of their online communications, JANE DOE described how her father engaged in abusive behavior towards her, including texts containing abusive language and physical abuse. These facts, along with his belief he had developed a relationship with JANE DOE, culminated in his driving from Oklahoma to JANE DOE's father's home in Arkansas on May 2, 2024. After arriving around 11:30 p.m., the SUBJECT left shortly thereafter when notified by JANE DOE her father was on his way home. He drove to a nearby gas station and waited there for a couple of hours. He returned to JANE DOE's house around 2:00 a.m. on May 3, 2024, met JANE DOE at her front door, loaded a large and heavy bag belonging to JANE DOE into his car, and then left. He explained the note left for her father was written by JANE DOE.

17. The SUBJECT drove JANE DOE straight to the Oklahoma City area where they checked into the motel around 5:00 a.m. They both entered their assigned room around 5:30 a.m. and slept. Leaving JANE DOE in the motel room, the SUBJECT left around 10:30 a.m. to look for apartments or for a place where JANE DOE could stay. He returned to the motel around 1:30

p.m. with some food. He ate while JANE DOE watched television. They both slept more in the afternoon until he left for the last time around 5:30 p.m.

18. At some point after leaving the motel room for the last time, the SUBJECT became aware of the issuance of the Amber Alert and got scared. He drove back to the motel, and, upon finding a number of OCPD cars in and around the parking lot, he drove away towards his apartment in Edmond, Oklahoma, where he was eventually found and detained.

19. Upon further questioning, the SUBJECT provided more details about the activities that occurred between himself and JANE DOE while they spent time together in the motel room. He described at least some of their time together as involving "romance." He further described how he and JANE DOE engaged in "hugging" and "kissing." However, he denied anything further took place. During the course of the interview, the SUBJECT consented to a search of the motel room. Located in the bathroom of the motel room a "crusty" towel was found, as described by the searching agents and officers.

**SNAPCHAT INFORMATION**

20. Snapchat is an Internet-based mobile application made by Snap Inc. and available through the iPhone Application Store and Google Play. The application provides a way to share moments with photos, videos and text. "Snaps" is a feature enabling users to take a picture or video of themselves in real time and share them with another Snapchat user. Unless the sender or recipient chooses to save the picture or video, the message will be deleted from their devices upon its successful sending or opening. Users are able to save the pictures or videos to their devices or to "Memories", which is Snapchat's cloud-storage service.

21. According to the most recent Snapchat Law Enforcement Guide, "Snapchat retains logs for the last 30 days of Snaps sent and received, for 24 hours of posted Stories, and for any

unopened Chats or those saved by a sender or recipient. The logs contain meta-data about the Snaps, Stories, and Chats, but not the content." Further, the last part of the "Content" section of the Guide states, "A federal or state search warrant is required for requests that include message content," indicating that such a request is possible. Subsequently, it is reasonable to assume some, if not all, of the content contained in the Snaps and Chats is accessible via a valid search warrant.

22. "Stories" is a feature allowing Snapchat users to attach pictures or videos to their "Stories" which can be viewed for up to 24 hours. "Stories" can also be saved in "Memories." A user can also type messages, send pictures, videos, audio notes, and video notes to friends within the Snapchat application using the "chat" feature. A user sends a "chat" message to a friend, and once it is viewed by both parties, and both parties swipe away the chat screen, the message will be cleared. Within the Snapchat application itself, a user can opt to save part of the "chat" by tapping on the message that they want to keep. The user can clear the message by tapping it again.

23. In general, providers like Snapchat, Inc. ask each of their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number).

24. Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to

register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

25. In some cases, account users will communicate directly with a provider about issues relating to their account, such as technical problems, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

26. In general, providers like Snapchat, Inc. ask each of their subscribers to provide certain personal identifying information when registering for an account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, e-mail addresses, and, for paying subscribers, a means and source of payment (including any credit or bank account number).

27. Providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account, and other log files that reflect usage of the account. In addition, providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

28. In some cases, account users will communicate directly with a provider about issues relating to their account, such as technical problems, or complaints from other users. Providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

29. On May 7, 2024, Snapchat received a Preservation Letter from me for the accounts listed in Attachment A, so the content of those accounts should be preserved as of that date.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

30. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Snap, Inc. Because the warrant will be served on Snap, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

31. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Snap, Inc. to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

32. In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime under investigation, including but not limited to, undertaking a cursory inspection of all information within the account described in Attachment

A. This method is analogous to cursorily inspecting all the files in an office filing cabinet to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with Snapchat Chats, including pictures and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

**CONCLUSION**

33. Based on the forgoing, I request that the Court issue the proposed search warrant authorizing the search of the accounts named in Attachment A for the items named in Attachment B, which constitute evidence, fruits, and instrumentalities of the foregoing violation.

34. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

David A. Garrison
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on May 10, 2024.

Shon T. Erwin
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with accounts: "ryan_peterr," and "abbeyforce24" that is stored at premises owned, maintained, controlled, or operated by Snap, Inc. a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, California 90405.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by Snap, Inc.

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., regardless of whether such information is located within or outside the United States, and including any messages, records, files, logs, photographs, videos, or other information that has been deleted but is still available to Snap, Inc., or has been confirmed preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap, Inc. is required to disclose the following information to the government for the accounts listed in Attachment A for the time frame between **June 1, 2023 and May 5, 2024.**

A. All stored communications and other files in Snap, Inc.'s possession (including account access information, event histories including dates and times, connection dates, times, and locations, connection IP information, message content, graphics files, video files, attachments, etc., further detailed below), whether physical, stored on electronic media, or temporarily extant on any computer or server, reflecting communications to or from the Snapchat accounts identified in Attachment A;

B. All subscriber information, including Snapchat username, vanity names, e-mail addresses, phone numbers, full name, physical address, and other personal identifiers;

C. All information pertaining to the creation of the accounts, including date and time of creation, IP address used to create the account, and all subscriber information provided at the time the accounts was created;

D. Timestamp and IP address of all account logins and logouts;

E. Logs of all messages and all files that have been created and Snaps sent or accessed via the Snapchat accounts identified in Attachment A, or that are controlled by user accounts associated with the Snapchat account;

F. The account name, display name, identifiers, and all available subscriber information for any other Snapchat account(s) associated with the Snapchat account listed in Attachment A;

G. All content, records, connection logs, and other information relating to communications sent from or received by the Snapchat accounts identified in Attachment A from June 1, 2023 to May 5, 2024, including but not limited to:

1. Transmitter/Sender identifiers (i.e., addresses and/or IP address);
2. Connection date and time;
3. Method of Connection (telnet, ftp, http);
4. Data transfer volume;
5. Username associated with the connection, and other connection information, including the IP address of the source of the connection;
6. All GPS location data and geographical data stored in relation to the accounts, including, but not limited to, location data derived from Snaps, Snap Map, Memories, Stories, logins, logouts, access records, and data pulled from the user's device.
7. Account(s) subscriber identification records;
8. Other user accounts associated with, referenced in, or accessed by the Snapchat accounts identified in Attachment A;
9. Address books, contact lists, and "my friends";

10. Records of files or system attributes accessed, modified, or added by the users;
11. All records and other evidence relating to the subscriber(s), customer(s), account holder(s), or other entity(ies) associated with the Snapchat accounts identified in Attachment A, including, without limitation, subscriber names, user names, screen names or other identifiers, addresses, residential addresses, business addresses, and other contact information, telephone numbers or other subscriber number or identifier number, billing records, all information regarding the length of service and the types of services the subscriber or customer utilized, and any other identifying information, whether such records or other evidence are in electronic or other form. Such records and other evidence include, without limitation, correspondence and other records of contact by any person or entity about the above-referenced accounts, the content associated with or relating to postings, communications, and any other activities to or through the Snapchat accounts listed in Attachment A, whether such records or other evidence are in electronic or other form;
12. All records pertaining to communications between Snap, Inc. and the user(s) of the Snapchat accounts identified in Attachment A regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken;
13. The content of all messages and Snaps sent, received, saved, stored, or otherwise preserved.

Snap, Inc. is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence, instrumentalities, and/or contraband of violations of Title 18, United States Code, Section 2422(b) involving the users of Snapchat accounts "ryan_peterr" and "abbeyforce24" and including, for the account listed in Attachment A, information pertaining to the following matters:

a. Communications between the Snapchat accounts identified in Attachment A.

b. Communications between the Snapchat account identified in Attachment A and others from June 1, 2024 to May 5, 2024.

c. Evidence indicating the times, geographic locations, and electronic devices from which the Snapchat accounts listed in Attachment A was accessed and used, to determine the chronological and geographical context of the Snapchat account access, use, and events relating to the crimes under investigation and to the Snapchat account users;

d. Evidence indicating the Snapchat account users' state of mind as it relates to the crimes under investigation;

e. The identity of the person(s) who created or used the Snapchat accounts identified in Attachment A, including records that help reveal the whereabouts of such person(s);

As used above, the terms "documents," and "communications," refers to all content regardless of whether it is in the form of pictures, videos, audio records, text communications, or other medium, and whether in draft or complete form, and whether sent or received.

As used above, the terms "records" and "information" include all forms of data stored by Snap, Inc., including IP addresses, toll records, and account identifying information.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, instrumentalities,

and/or contraband described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.